RECEIVED

AUG 2 1 2015

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

JAMES "JAMIE" HINSON

VERSUS

TECHTRONIC INDUSTRIES OUTLETS, INC.,
   ET AL.

CIVIL ACTION NO. 13-0851

JUDGE DOHERTY

MAGISTRATE JUDGE HANNA

## MEMORANDUM RULING

Pending before the Court is the Motion for Summary Judgment [Doc. 37] filed by defendants Techtronic Factory Outlets, Inc. ("Techtronic")[1] and Home Depot USA, Inc. ("Home Depot"). Defendants seek summary dismissal of all of the plaintiff's claims against them with prejudice on several grounds, as more fully discussed hereinbelow.  Plaintiff James "Jamie" Hinson ("plaintiff") filed an opposition brief [Doc. 46], and defendants filed a Motion for Leave to File Reply Brief [Doc. 47], which is GRANTED.

For the following reasons, defendants' motion for summary judgment is GRANTED, and the plaintiff's claims are DENIED AND DISMISSED WITH PREJUDICE.

## I.   Factual and Procedural Background

The instant lawsuit is a product liability action arising out of personal injuries sustained by the plaintiff while using a pressure washer allegedly manufactured by Techtronic, containing a component part manufactured by Honda (a motor), and sold fully assembled by Home Depot.  The circumstances of the accident appear to be undisputed and are as follows.  On March 18, 2012, the plaintiff alleges he loaned the pressure washer to his neighbor, Mr. Nabil Loli, and was attempting

---

[1] Techtronic argues it was incorrectly named as "Techtronic Industries Outlets, Inc." in the complaint.

to assist the neighbor in getting the pressure washer to start when the handle used to crank the engine came apart in the plaintiff's right hand, resulting in a pointed shard of the broken handle piercing the right index finger of the plaintiff's right dominant hand. The plaintiff is a self-employed stock broker. The plaintiff underwent surgery to his right hand and index finger as a result of the accident and alleges permanent sensory loss due to nerve damage in his right index finger.

With respect to the pressure washer itself, the following facts appear to be undisputed:

- As of the date of the accident, the plaintiff had owned the pressure washer for a year and a couple of months.

- The pressure washer was used a total of eight or nine times, by plaintiff personally six or seven times and by others, including the plaintiff's brother and the plaintiff's neighbor, Nabil Loli. The pressure washer was used outside the plaintiff's presence on at least two other occasions.

- The recoil starter handle on the pressure washer was pulled 82-92 times, if not more, without incident or issue.

- At his deposition, the plaintiff explained the process he went through to start the pressure washer. He used CLR,[2] a lubricant; two pulls to work CLR into the engine; another four pulls, "if not more," to start the engine; two more pulls to restart the machine after refueling; and two more pulls to restart the machine after refueling a second time. The plaintiff's brother would have done the same when he used the pressure washer.

- The plaintiff testified that on the day of the accident, he used CLR, two pulls to work CLR into the engine, and another four pulls, "if not more," to start it. The plaintiff testified Mr. Loli pulled another three times, and then plaintiff pulled another three or four pulls.

- Plaintiff stored the pressure washer at issue in his garage when it was not in use.

- Plaintiff never inspected the pressure washer, including the recoil starter handle, and never had anyone inspect it on his behalf, either before or after the accident.

- Plaintiff did not inspect the recoil starter handle immediately prior to the accident.

_____

[2] "CLR" is a formula for removing calcium, lime, and rust.

- Plaintiff did not notice any problems with the recoil starter or recoil starter handle prior to the accident.
- Plaintiff's brother did not indicate to plaintiff that he had any problems with the pressure washer during his use.

The plaintiff filed the instant lawsuit against Techtronic as the manufacturer of the pressure washer and Home Depot[3] as the assembler of the device, alleging claims under the Louisiana Products Liability Act ("LPLA"), La. Rev. Stat. §9:2800.51, *et seq.*, which the parties do not dispute governs all claims,[4] as follows: (1) defective construction or composition; (2) defective design; (3) failure of adequate warning; (4) failure to conform to an express warranty; and (5) misleading marketing of the product. The plaintiff has also alleged a claim under the doctrine of *res ipsa loquitor*.

Defendants filed the instant motion for summary judgment on May 27, 2015, arguing plaintiff has taken no depositions nor retained any experts and can prove none of the essential elements of

---

[3] Plaintiff alleges Home Depot, by virtue of having assembled the pressure washer, became a *de facto* manufacturer of the pressure washer under the LPLA, citing La. Rev. Stat. §9:2800.53(1)(d), which states:

> (d) A seller of a product of an alien manufacturer if the seller is in the business of importing or distributing the product for resale and the seller is the alter ego of the alien manufacturer. The court shall take into consideration the following in determining whether the seller is the alien manufacturer's alter ego: whether the seller is affiliated with the alien manufacturer by way of common ownership or control; whether the seller assumes or administers product warranty obligations of the alien manufacturer; whether the seller prepares or modifies the product for distribution; or any other relevant evidence. A "product of an alien manufacturer" is a product that is manufactured outside the United States by a manufacturer who is a citizen of another country or who is organized under the laws of another country.

This Court has question whether §9:2800.53(1)(d) stands for the proposition espoused by the plaintiff. The plaintiff also relies on *Matthews v. Walmart Stores*, 708 So.2d 1248 (La. App. 4th Cir. 1998) in support of this argument. It appears the *Matthews* case does not stand for this proposition. *Matthews*, in fact, held Wal-Mart was *not* liable as the retailer who sold a foreign good – a lamp – that bore the name of no manufacturer, but merely indicated the product was "Made in China." In *Matthews*, the plaintiff was entitled to no recovery under the LPLA. Because the Court grants summary judgment herein, this Court need not made a final determination as to this issue at this juncture.

[4] This matter was originally filed in state court and removed to this Court on the basis of diversity jurisdiction. Doc. 1.

any of the foregoing claims in this matter, all as more fully discussed hereinbelow.

## II.     Law and Argument

### A.     Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. PROC. 56(b).  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. PROC. 56(e).

As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

The plain language of Rule 56(c) <u>mandates</u> the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

. . . .

    . . . In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888-89 (1990)(quoting *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322-23 (1986)).

The Fifth Circuit has further elaborated:

    [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations and internal

quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." *Id.* To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

**B.     Plaintiff's Claims**

**1.     Construction or composition defect**

La . Rev. Stat. §9:2800.54(B)(1) states "a product is unreasonably dangerous *if and only if* . . . (1) The product is unreasonably dangerous in **construction or composition** as provided in R.S. 9:2800.55. . ." (emphasis added).  La. Rev. Stat. §9:2800.55 states:

> A product is unreasonably dangerous in **construction or composition** if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer.

La . Rev. Stat. §9:2800.54(B)(1) (emphasis added).

Louisiana jurisprudence holds that under a construction or composition claim, it is the plaintiff's burden "to demonstrate not only what a manufacturers' specifications or performance standards are for a particular product, but how the product in question materially deviated from those standards so as to render it 'unreasonably dangerous.'" *See* La. Rev. Stat. §2800.54(D).  *See also Morris v. United Services Auto. Ass.*, 756 So.2d 549, 558 (La.App. 2nd Cir. 2000).

In their motion for summary judgment, the defendants argue the only evidence plaintiff offers to support his claim for defect in composition or construction is the pressure washer handle itself.

Defendants argue the plaintiff does not explain how the pressure washer – and specifically, how the handle that broke – materially deviated from any specifications or standards as he is required to do under Louisiana law.  Plaintiff argues only that the handle broke, however plaintiff did not have the handle inspected and did not have any expert testify as to how the handle was defective.  Louisiana law is clear a construction defect cannot be inferred based solely on the fact that an accident occurred.  *Morris*, 756 So.2d at 558.

Defendants retained two experts: Andrew Hornick, a certified fire and explosion investigator ("CFEI"), and Sarah E. Morgan, Ph.D., an expert in polymer science, both of whom personally inspected the pressure washer and the handle at issue and issued reports.  Mr. Hornick was the Product Safety Engineer responsible for the development of the model pressure washer at issue.  As part of his inspection of the pressure washer at issue, Mr. Hornick repeatedly pulled the engine over and checked the compression in the engine, as well as the pressures built up in the engine.  Mr. Hornick concluded the "compression of this engine was normal" and "there was no mechanical problem with the machine that led to a higher than normal reactive force to the recoil system."[5]  Mr. Hornick also reported finding "visible deformations" on the handle which were not a part of the manufacturing process.[6]   Ultimately, Mr. Hornick concluded "the pressure washer, including the component parts thereof and specifically the recoil starter handle, did not suffer from any design or manufacturing defects."[7]

Defendants' expert Sarah Morgan holds a Ph.D in polymer science and has a professional

---

[5] *See* Report of Andrew Hornick, attached as Exhibit "I" to defendants' motion for summary judgment.

[6] *Id.*

[7] *Id.*

background of researching and analyzing polymers like polyethylene, the material used to make the

pressure washer handle at issue.  Dr. Morgan inspected the handle at issue, including its fracture

surface, at both 35x and 50x magnification, and opined as follows:

> There was no evidence of solvent stress cracking on the fracture surface. There was
> no evidence of contamination or inclusion of foreign bodies within the molded
> plastic that could serve as stress concentrators and initiate failure. There was no
> evidence that the fracture propagated along a knit-line or molded-in defect. By visual
> and microscopic evaluation there was no evidence of a manufacturing defect.[8]

Dr. Morgan also confirmed Mr. Hornick's finding of visual deformities on the handle.

Specifically, Dr. Morgan found a number of "abrasions and impact sites on both the top and bottom

surfaces" that were the result of "impacts with harder surfaces."[9]   Microscopic inspection "of the

fracture surface revealed a large number of these deformations, including indentations and notches,

on multiple surfaces."[10]   Dr. Morgan also found "a relatively large deformation site . . . on the

bottom of the part" which showed "evidence of multiple impact events, with several indentations

and notches in the area."[11]  Dr. Morgan concluded her report as follows: "In my opinion a breakage

event initiated at this site, as plastic deformation was evident in the area, with crazes emanating from

the impact area indicating the direction of crack propagation,"[12] indicating a post-manufacture impact

that caused the handle to break.

The evidence presented by both Mr. Hornick and Dr. Morgan suggests post-manufacturing

damage to the pressure washer, and the plaintiff has not controverted that evidence.  The plaintiff

---

[8]  *See* Report of Sarah Morgan, attached as Exhibit "J" to defendants' motion for summary judgment.

[9]  *See* Report of Sarah Morgan, attached as Exhibit "J" to defendants' motion for summary judgment.

[10]  *Id.*

[11]  *Id.*

[12]  *Id.*

did not depose either Mr. Hornick or Dr. Morgan and therefore, the opinions of Mr. Hornick and Dr. Morgan are uncontroverted.  Although the plaintiff alleges a construction and composition defect claim, the defendants have presented evidence of post-manufacturing damage to the handle, and the plaintiff has not controverted that evidence with evidence of his own to establish an actual manufacturing defect.  Consequently, this Court concludes the defendants are entitled to summary judgment on the plaintiff's construction or composition defect claim.

### 2.     Design defect

La. Rev. Stat. §9:2800.54(B)(2) states "a product is unreasonably dangerous *if and only if* . . .(2) The product is unreasonably dangerous in **design** as provided in R.S. 9:2800.56. . ." (emphasis added).  La. Rev. Stat. §9:2800.56 states:

> A product is unreasonably dangerous in **design** if, at the time the product left its manufacturer's control:
>
> (1) There existed an alternative **design** for the product that was capable of preventing the claimant's damage; and
>
> (2) The likelihood that the product's **design** would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative **design** and the adverse effect, if any, of such alternative **design** on the utility of the product. . . ."

La. Rev. Stat. §9:2800.54(B)(2) (emphasis added).

Under Louisiana law, in order to recover on a claim for design defect, a claimant must: (1) identify "a specific alternative design for the product that would have prevented the plaintiff's alleged damages;" and (2) present evidence "concerning the extent of the risk that the alternative design would have avoided, the economic costs entailed by those accidents, or the extent of the reduction in frequency of those accidents that would have followed on the use of the proposed alternative design." *Scordill v. Louisville Ladder Group, LLC*, 2003 WL 22427981, *9 (E.D. La.

2003), *citing* La. Rev.Stat. §9:2800.56(1). As with a composition or construction claim, it is plaintiff's burden to establish these elements. *See* La. R.S. §9:2800.54(D).

Defendants cite *Scordill* as an example of a case wherein the plaintiff's claims were summarily dismissed on summary judgment because of lack of evidence of an alternative design. In *Scordill*, the plaintiff designated an expert to testify regarding the design of a ladder that failed. The expert offered opinions concerning a variety of ways in which "a more robust design" could have been achieved to prevent the accident, offering several design changes, and even submitting a heavy-duty ladder manufactured by the defendant four years prior to the date it manufactured the ladder at issue as an existing, alternative design. *Id.* Nevertheless, the Court held the expert's opinion was "conclusory" and the plaintiff had "failed to [actually] allege a design defect or identify a specific alternative design." *Id.* As such, the Court held the plaintiff's design defect claim should be dismissed. *Id.* The court went on to state even if it had determined the variety of design alternatives offered by the plaintiff suggested a design defect, defendants would still be entitled to summary judgment as "plaintiffs failed to present evidence 'concerning the extent of the risk that the alternative design would have avoided, the economic costs entailed by those accidents, or the extent of the reduction in frequency of those accidents that would have followed on the use of [the] proposed alternative design.'" *Id.* at *10, *citing Kampen v. American Isuzu Motors, Inc.,* 119 F.3d 1193, 1202–03 (5th Cir.1997), *rev'd on other grounds* 157 F.3d at 306.

In so explaining, the *Scordill* court cited the Fifth Circuit's decision in *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167, 183 (5th Cir. 1990), stating:

> The Fifth Circuit affirmed a grant of summary judgment in favor of a product manufacturer when the claimant offered no evidence concerning the extent of the risk that the alternative design would have avoided, little evidence concerning the burden of switching to the alternative design, and no evidence on the loss of product utility

> that use of the alternative design would have occasioned. Like the claimants in Lavespere the [plaintiffs] bring no evidence as to the increased cost of manufacturing the proposed alternative design, no evidence as to the extent of the risk that the alternative design would have avoided, and no evidence of the alternative design's potential effect on product utility.

*Scordill*, 2003 WL 22427981 at *10. In the end, the *Scordill* court held: "Because plaintiffs failed to identify a specific design defect as the proximate cause of plaintiffs' injury and failed to conduct any risk/utility analysis of their suggested alternate design, defendant is entitled to summary judgment on plaintiffs' design defect claim." *Id.*

In the instant case, in response to the defendants' specific discovery requests, the plaintiff has offered no evidence relating to a "specific alternative design for the product that would have prevented the plaintiff's alleged damages," nor has the plaintiff provided any evidence "concerning the extent of the risk that the alternative design would have avoided, the economic costs entailed by those accidents, or the extent of the reduction in frequency of those accident that would have followed on the use of the proposed alternative design."

Defendants further argue that Dr. Morgan reported that "high density polythylene is commonly used for applications that contact fuel, such as fuel tanks and power equipment components, because of its high strength, toughness, and chemical resistance." The plaintiff has designated no expert who has opined that the use of polyethylene as a choice of material for the handle in question constitutes a design defect.

Thus, the plaintiff has failed to present sufficient evidence to counter the defendants' well-argued and supported motion on the issue of the defective design claim. Considering the foregoing unrebutted evidence of the defendants, this Court concludes the defendants are entitled to summary dismissal of the plaintiff's design defect claim.

### 3.      Failure to warn claim

La. Rev. Stat. §9:2800.54(B) states "a product is unreasonably dangerous *if and only if* . . .

(3) The product is unreasonably dangerous because an **adequate warning** about the product has not

been provided as provided in R.S. 9:2800.57." (emphasis added).  La. Rev. Stat. §9:2800.57 states:

> (A) A product is unreasonably dangerous because an **adequate warning** about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.
>
> (B) A manufacturer is not required to provide an **adequate warning** about his product when:
>
>> (1) The product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product's characteristics; or
>>
>> (2) The user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic."

La. Rev. Stat. §9:2800.57 (emphasis added).   Again, it is plaintiff's burden to establish these

elements.  La. Rev. Stat. §9:2800.54(D).

Thus, to prevail on a failure to warn claim, the plaintiff must prove that, at the time the

product left defendants' control, "the product possessed a characteristic that may cause damage and

[defendants] failed to use reasonable care to provide an adequate warning of such characteristic and

its dangers to users and handlers of the product." *Colber v. Sonic Restaurants, Inc.*, 741 F.Supp.2d

764, 770 (W.D. La. 2010), *citing Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).

A manufacturer's duty to warn, however, does not include warnings concerning dangers that are, or

should be, obvious to the ordinary user.  *Colber*, 741 F.Supp at 770 , *citing Ballam v. Seibels Bruce*

*Ins. Co.*, 712 So.2d 543, 550 (La. App. 4th Cir.1998); *Mallery v. Int'l Harvester Co.*, 690 So.2d 765,

768 (La. App. 3rd Cir.1996). *See also Seither v. Winnebago Ind., Inc.*, 853 So.2d 37, 42 (La. App. 4th Cir. 2003); *Halverson v. Ronk*, 97 So.3d 545 (La. App. 5th Cir. 2012) (finding no duty to warn of necessity of placing base of a ladder on level ground prior to use, as plaintiff should know already know such from common experience).

In the instant case, defendants propounded the following interrogatory with respect to plaintiff's failure to warn claim:

> **INTERROGATORY NO. 17:** In paragraph 10 of your Petition you state the pressure washer was unreasonably dangerous because "it possessed a characteristic that may cause damage beyond that contemplated by an ordinary user or handler while used as anticipated." Please: (1) identify with specificity each such "characteristic" you contend the pressure washer possessed; (2) state each fact upon which you rely in alleging the pressure washer possessed each such characteristic; (3) identify each document or other item which you contend supports your allegations that the pressure washer possessed each such characteristic; (4) state what you contend would be required for a warning pertaining to each such characteristic to be adequate; and (5) state how the warnings provided with the pressure washer were inadequate.
>
> **RESPONSE:** The handle we have retained.

Defendants argue plaintiff's response is essentially non-responsive. Defendants further argue the handle in question was made from polyethylene, which is a durable, yet not indestructible, plastic, and it should have been obvious to the plaintiff the handle could break, especially if it had become damaged, as plaintiff's experts have reported it had become.

Finally, defendants argue the plaintiff testified that upon purchase of the pressure washer, he received an Operator's Manual, which contains a section entitled 'IMPORTANT SAFETY INSTRUCTIONS,' which included a recommendation to wear rubber gloves and to check for damaged parts before using the pressure washer.  The Safety Instructions also include "MAINTENANCE" instructions for the proper care, use, and storage of the pressure washer, which

plaintiff testified he did not follow.[13]  Defendants argue based upon the plaintiff's failure to read and/or follow the safety and maintenance instructions in the Operator's Manual, there is no basis to believe the plaintiff would have heeded a warning about the handle had one been included in the Operator's Manual, and that any warning about the handle would have been futile.

A manufacturer is required to provide an adequate warning of any danger inherent in the normal use of its product which is not within the knowledge of or obvious to the ordinary user. *Gauthier v. McDonough Power Equipment, Inc.*, 608 So.2d 1086, 1089 (La. App. 3rd Cir. 1992), *citing Halphen v. Johns-Manville Sales Corp.*, 484 So.2d 110 (La.1986).  Once the plaintiff proves the lack of an adequate warning or instruction rendered the product unreasonably dangerous, his cause-in-fact burden is assisted by a presumption: when a manufacturer fails to give adequate warnings or instructions, a presumption arises that the user would have read and heeded such admonitions. The presumption may, however, be rebutted if the manufacturer produces contrary evidence which persuades the trier of fact that an adequate warning or instruction would have been futile under the circumstances. *Gauthier*, 608 So.2d at 1089, *citing Safeco Insurance Co. v. Baker*, 515 So.2d 655 (La.App. 3rd Cir.1987), *writ denied*, 519 So.2d 130 (La.1988).  An essential element of a cause of action based on failure to adequately warn of a product's danger is that there must be a reasonable relationship between the omission of the manufacturer and the injury.  *Bloxom v. Bloxom*, 512 So.2d 839 (La.1987).

In *Safeco Ins. v. Baker*, 515 So.2d 655 (La. App. 3rd Cir. 198), Superior Fireplace Company

---

[13] Despite instructions to the contrary, the plaintiff testified at his deposition that he did not drain the gas tank; never drained the engine lubricant; never disconnected the spark plug wire or removed the spark plug; never cleaned the air filter; and never flushed the injection hose. *See* Deposition of James Hinson, attached to defendants' Motion for Summary Judgment as Exhibit A, at pp. 69-70. Furthermore, while the plaintiff testified he would drain the water pump, he did so in a manner that did not conform to the Operator's Manual, demonstrating his failure to read and adhere to the Operator's Manual.

appealed a jury verdict which assessed it with partial fault for fire damage to the home of the homeowner after the installation of a prefabricated fireplace burned the home down after installation by a carpenter who did not read the installation instructions.  Superior was assessed by the jury with 30% of the fault at trial, which Superior appealed, arguing the cause in fact of the fire was the installer's failure to even read the instructions before installing the fireplace.  The appellate court agreed and reversed that portion of the jury's verdict finding the fireplace company partially at fault. In so ruling the appellate court noted that where it was uncontroverted at trial and clearly established through expert testimony that the installer violated six installation instructions contained in a booklet provided by Superior, the court held that even if more specific warnings had been provided and available, such warnings would have been futile because the installer did not even read the instructions he had available.  Thus the court concluded:

> Safeco failed to prove that the lack of an adequate warning was a cause in fact of the fire. With the absence of this integral causative fact the record overwhelmingly convinces us that this case does not fall within the ambit of products liability. Therefore, we reverse the jury's determination that Superior was at fault.

*Safeco*, 515 So.2d at 658.

In the instant case, the lack of a warning about the fact that the handle could break may give rise to a presumption that the plaintiff would have heeded such a warning.  However, in this case, this Court concludes that presumption is rebutted by evidence showing such a warning would have been futile, as the defendants have presented evidence showing the plaintiff ignored other instructions and warnings contained within the Operator's Manual that accompanied the pressure washer.  Indeed, the plaintiff admitted he did not follow the safety and maintenance instructions in the Operator's Manual sold along with the Husky pressure washer.  Therefore, this Court believes there is no reasonable basis to believe that even if the defendants had included a warning that the

handle of the pressure washer might break, the plaintiff would have altered his actions.  Thus, any warning would have been futile and the plaintiff cannot prove causation.  *See, e.g., Safeco*, 515 So2d at 655.  For this reason, the Court concludes the defendants are entitled to summary dismissal of the plaintiff's failure to warn claim.

### 4.    Failure to conform to an express warranty

La. Rev. Stat. §9:2800.54(B)(4) states "a product is unreasonably dangerous *if and only if* . . . (4) The product is unreasonably dangerous because it **does not conform to an express warranty** of the manufacturer about the product as provided in R.S. 9:2800.58." (emphasis added).  La. Rev. Stat. §9:2800.58 states: "A product is unreasonably dangerous when it does not conform to an express warranty made at any time by the manufacturer about the product if the express warranty has induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was untrue."

The LPLA defines an "express warranty" as follows:

> a representation, statement of alleged fact or promise about a product or its nature, material or workmanship that represents, affirms or promises that the product or its nature, material or workmanship possesses specified characteristics or qualities or will meet a specified level of performance. "**Express warranty**" does not mean a general opinion about or general praise of a product. A sample or model of a product is an express warranty.

La. Rev. Stat. §9:2800.53(6) (emphasis added).

The warranty in question is located on Page 14 of the Operator's Manual and states as follows:

### WARRANTY
### LIMITED NON-ENGINE WARRANTY STATEMENT

Techtronic Industries North America, Inc. warrants to the original retail purchaser that this HUSKY® brand pressure washer is free from defect in material and

workmanship and agrees to repair or replace, at Techtronic Industries North America, Inc.'s discretion, any defective product free of charge within this time period from the date of purchase:

Two years if the product is used for personal family or household use.

This warranty extends to the original retail purchaser only and commences on the date of the original retail purchase. . .[14]

Based on the express language of the warranty, the warranty is limited to repair or replacement of the pressure washer, and is limited to situations in which the pressure washer has found to be defective.

Review of the record shows the warranty has not been implicated in this case. It is undisputed the plaintiff has not asked that the pressure washer be repaired or replaced. Therefore, the plaintiff has not performed the obligations necessary to trigger coverage under the warranty. Considering the foregoing, the plaintiff's claims for failure to conform to the express warranty must be dismissed.

### 5. Misleading marketing of the product

This claim appears to be premised on the argument that the pressure washer "was unreasonably dangerous in its anticipated use due to misleading of the marketing of the product by inducing potential buyers . . . to believe the product was a Honda manufactured product due to the use of the Honda name on the motor of the 3-N-1 Hi Speed Gasoline Pressure Washer, when in fact Honda was only a manufacturer of a component part."[15] Defendants argue this claim is not a proper claim under the LPLA, and this Court agrees.

---

[14] The warranty is contained within the Operator's Manual, which is attached to Techtronic's motion for summary judgment as Exhibit "K."

[15] *See* plaintiff's Complaint, Doc. 1, at ¶10(E).

The LPLA allows four claims: construction and composition defect claims; design defect claims; failure to confirm to express warranty claim; and failure to warn claims. The foregoing claim is simply not recognized by the LPLA, and the plaintiff does not appear to specifically oppose this portion of the defendants' motion in its brief, rendering this portion of the motion for summary judgment unopposed and subject to dismissal on that ground alone. Furthermore, even if such a claim did exist, the record shows the pressure wash itself appears to be labeled as a "Husky" pressure washer, with the "Husky" name and logo appearing in three separate places on the pressure washer itself, and the name "Honda" appearing on only the motor. The Operator's Manual inludes the "Husky" brand name and logo on the front cover, and states "Your pressure washer has been engineered and manufactured to Husky's high standards....," while the Honda name does not appear anywhere on the cover of the Operator's Manual.

Considering the foregoing, the defendants argue there has been no evidence of false advertising, and the plaintiff has countered with no evidence to controvert that argument. For this reason, the plaintiff's advertising claim is subject to summary dismissal.

### 6.   *Res Ipsa Loquitor*

The doctrine of *res ipsa loquitur*[16] is an evidentiary doctrine utilized when there has been a highly unusual act/occurrence; there is no direct evidence to suggest that a defendant's negligence brought about said act/occurrence; and yet, the circumstances surrounding the anomalous event (coupled with the defendant's connection to the unusual act/occurrence) allow the finder of fact to conclude that the defendant was negligent. *See Lawson v. Mitsubishi Motor Sales of America, Inc.*, 938 So.2d 35, 44-45 (La. 2006). In *Cangelosi v. Our Lady of the Lake Regional Medical Center*,

---

[16] The phrase "*res ipsa loquitor*" is Latin for "the thing speaks for itself."

564 So.2d 654, 600. (La. 1989), this Court stated:

> The principle of res ipsa loquitur is a rule of circumstantial evidence that infers negligence on the part of defendants because the facts of the case indicate that the negligence of the defendant is the probable cause of the accident, in the absence of other equally probable explanations offered by credible witnesses. The doctrine allows an inference of negligence to arise from the common experience of the factfinder that such accidents normally do not occur in the absence of negligence. Additionally, the doctrine does not dispense with the rule that negligence must be proved. It simply gives the plaintiff the right to place on the scales, "along with proof of the accident and enough of the attending circumstances to invoke the rule, an inference of negligence" sufficient to shift the burden of proof.
>
> The doctrine applies only when the facts of the controversy "suggest  negligence of the defendant, rather than some other factor, as the most plausible explanation of the accident. Application of the principle is defeated if an inference that the accident was due to a cause other than defendant's negligence could be drawn as reasonably as one that it was due to his negligence." The doctrine does not apply if direct evidence sufficiently explains the injury.

Generally, three criteria must be present for the doctrine to be applicable: (1) the facts must indicate that the plaintiff's injuries would not have occurred in the absence of negligence; (2) the plaintiff must establish that the defendant's negligence falls within his scope of duty to plaintiff; and (3) the evidence should sufficiently exclude inference of the plaintiff's own responsibility or the responsibility of others besides defendant in causing the accident. *Lawson*, 938 So.2d at 50, *citing Cangelosi*, 564 So.2d at 664.  Because the standard of proof is preponderance of the evidence, not proof beyond a reasonable doubt, the plaintiff's evidence need only exclude all other reasonable explanations for his injuries; it need not "conclusively exclude all other possible explanations for his injuries." *Cangelosi*, 564 So.2d at 664.

In the instant case, there is direct evidence submitted by the defendants – and uncontroverted by the plaintiff – that plausibly explains the accident involving the pressure washer.  To wit, the defendants have submitted evidence – discussed by Dr. Morgan in her report – of a number of

"abrasions and impact sites on both the top and bottom surfaces" of the pressure washer handle that appear to be the result of "impacts with harder surfaces."   Microscopic inspection "of the fracture surface revealed a large number of these deformations, including indentations and notches, on multiple surfaces."  Dr. Morgan also found "a relatively large deformation site . . . on the bottom of the part" which showed "evidence of multiple impact events, with several indentations and notches in the area."  Dr. Morgan concluded in her report as follows: "In my opinion a breakage event initiated at this site, as plastic deformation was evident in the area, with crazes emanating from the impact area indicating the direction of crack propagation," indicating a post-manufacture impact that caused the handle to break.  Considering the foregoing, the defendants have come forward with direct evidence of circumstances that caused the accident, which evidence does not support the plaintiff's allegations that the breakage of the handle was caused by a manufacturing defect.  Thus, this Court concludes the plaintiff's allegations in this case are not "so unusual that . . . the only reasonable and fair conclusion is that the accident resulted from a breach of duty or omission on the part of the defendant." *Lawson*, 938 So.2d at 49.  As the defendants argue, the handle of the pressure washer is plastic and could have been damaged during the more than one year the plaintiff owned the pressure washer, all periods of time after which the pressure washer had left the custody and control of the manufacturer.  Consequently, it appears possible, and even likely, that the pressure washer was damaged during storage or use, but not due to a manufacturing defect, and there has been no evidence set forth by the plaintiff to suggest a manufacturing defect in this case.  To the contrary, the defendants have set forth a plausible explanation for how the handle was damaged, which argues against the application of the doctrine of *res ipsa loquitor*, and, therefore, this Court concludes the defendants are entitled to summary dismissal of this claim.

III.    **Conclusion**

For the foregoing reasons,

IT IS ORDERED that the Motion for Summary Judgment [Doc. 37] filed by defendants Techtronic Factory Outlets, Inc. ("Techtronic") and Home Depot USA, Inc. ("Home Depot") is GRANTED, and the plaintiff's claims against the defendants are DENIED AND DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the parties shall submit a Final Judgment, approved as to form, within ten days of the date of this Ruling.

THUS DONE AND SIGNED in Lafayette, Louisiana, this _____ day of August 2015.

_____
REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE